UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CATHY J. HAVLIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:19-cv-347-PPS |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Cathy Havlin was denied Social Security disability benefits, and she now appeals her case to me, arguing that the administrative law judge who reviewed her case committed multiple errors in his written decision. Because I agree with Havlin that there are several problems with the ALJ's written opinion—specifically, the failure to address her documented obesity with any specificity, the lack of any discussion of listings at step three, and the failure to provide sufficient reasons for rejecting the opinion of Havlin's doctor—I will reverse the decision and remand this case for further proceedings.

**Background**

Cathy Havlin (who was known as Cathy Hopkins at the time, prior to her divorce) applied for supplemental security income (SSI) on April 13, 2016 and was denied at every step in the administrative process, including in a written decision by an

ALJ. [A.R. [1] 10.] In his written decision, the ALJ followed the familiar five-step process utilized in these cases. *See* 20 C.F.R. § 416.920(a). At step one, the ALJ determined that since her alleged onset date, Havlin had not engaged in "substantial work activity." At step two, the ALJ determined whether Havlin had any severe impairments. He found she did. Specifically, Havlin had diabetes mellitus, peripheral neuropathy, spinal disorders, asthma, and chronic headaches. [A.R. 12.] The ALJ recognized Havlin had several other conditions or impairments, but he found that none of them were severe. Havlin was diagnosed with Bell's palsy in October 2017, but there were no further problems. [*Id.*]. She was also diagnosed with hypertension and pre-menopause, but those conditions were well-controlled. Finally, the ALJ noted that while Havlin alleged a disability based on bipolar disorder, the condition "does not cause more than minimal limitation in her ability to perform basic mental work activities and is therefore nonsevere." [*Id.*]

At step three, the ALJ is supposed to determine whether a claimant's impairments or a combination of those impairments meets or medically equals one of the applicable Social Security listings. If they do, then there will generally be a finding of disabled. Here, the ALJ's analysis was trifling. He simply stated "No treating physician or examining physician has indicated diagnostic findings that would satisfy any listed impairment. After independently considering the listings, the undersigned finds that the claimant's impairments, either separately or in combination, do not meet

---

[1] The Administrative Record (A.R.) in this case is found at Docket Entry # 9. Citations are to the page number in the lower right-hand corner of the A.R.

or medically equal the criteria of any listed impairment. The listings have threshold requirements that are not met in the instant case." [A.R. 14.] The ALJ did not state which listings he considered, which portions of any listings Havlin met, or why Havlin's severe conditions did not satisfy any portions of any listings.

Next, the ALJ determined Havlin's Residual Functional Capacity (RFC) which is a summary of what work-related activities a person can perform after taking into consideration their recognized impairments, both severe and non-severe. Here, the ALJ stated Havlin's RFC as follows:

> [T]he claimant the residual functional capacity to perform a limited range of sedentary work, that includes lifting, carrying, pushing, and pulling a maximum of 10 pounds with occasional lifting and carrying of lesser weights such as small tools or files [*sic*] folders; standing and walking no more than two hours in an eight-hour day; sitting at least six hours in an eight-hour day. After sitting for 30 minutes, she requires the opportunity to stand for two minutes at the workstation. She can never climb ladders, ropes, or scaffolds, or balance, and no more than occasionally perform other postural maneuvers. There should be no more than occasional operating of foot controls. She is able to no more than frequently handle, finger, and feel with her dominant right upper extremity, and with the bilateral upper extremities is able to able [*sic*] to do no more than frequent reaching. There should be no exposure to workplace hazards such as unprotected heights or dangerous moving machinery. There should be no operating of motorized vehicles as part of work duties. She can have no concentrated exposure to temp [*sic*] extremes, high humidity, fumes, odors, dusts, gases, or poor ventilation. She should have no concentrated exposure to vibration, sunlight, or bright task lighting. She cannot work in a more than moderately noisy environment.

[A.R. 14.] The ALJ arrived at this conclusion after reviewing Havlin's medical records and finding that while she had consistently reported limitations, primarily on account of her musculoskeletal issues relating to movement and sitting, her underlying medical

records did not reflect symptoms as severe as what she testified to. That was because the ALJ felt Havlin's records show she exhibited many normal findings relating to her arm strength and movement, grip, fine motor skills, leg strength and movement, and spinal movement. [A.R. 15.] Concerning Havlin's asthma, the ALJ stated that "[a]t times, she has demonstrated decreased breath sounds, although her lungs have routinely been clear to auscultation and percussion with normal breath sounds" with no acute distress. [A.R. 16.]

      The ALJ further discussed medical opinion evidence, all of which he discounted completely or gave "little weight." [A.R. 16.] The two State Agency medical consultants were given little weight because they "did not have the benefit of reviewing the entire record, as evidence was submitted after their opinions were given" and they "did not have the benefit of personally examining the claimant." [*Id.*] The ALJ did not discuss specifics, but instead he stated in a conclusory way that he found Havlin is "more limited than opined by these consultants." Concerning the opinion of Dr. Matthews, Havlin's primary care physician, who provided an opinion that Havlin was disabled and unable to work, the ALJ rejected her opinion because it was "simply not supported by the objective findings in the record, including some of her own treatment notes." The ALJ noted an inconsistency between Dr. Matthews opinion stating Havlin could not finger or feel with her right hand, and a note in her treatment notes stated Havlin had "4/5 strength in her right hand." [*Id.*] The ALJ likewise stated that the underlying records showed Havlin "often demonstrated normal musculoskeletal range of motion and strength"; "frequently had a normal gait without the use of an assistive device";

and "has often been in no acute distress." [*Id.*]

With the RFC in mind, the ALJ analyzed whether Havlin could perform any of her past relevant jobs. The ALJ determined that she could not because while Havlin had worked in the past 15 years, she never earned enough to qualify as having substantial gainful activity. [A.R. 16-17.] Thus, he proceeded to step five, and heard testimony from a Vocational Expert (VE). The VE testified that someone with Havlin's RFC would be able to find work in the national economy, and perform the representative occupations of a "stuffer," a "cutter/paster," or a "patcher/wire-wrapper"—whatever the heck those are. [A.R. 17.] Because that testimony was consistent with the Dictionary of Occupational Titles, the ALJ determined Havlin would be able to work. Accordingly, he found her to be not disabled and denied her application for benefits.

## Discussion

In a Social Security appeal, my role as district court judge is a limited one. My job is to review the ALJ's findings and reasoning to see if they are supported by substantial evidence. If substantial evidence supports the ALJ's factual findings, they are conclusive and will not be disturbed. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).; 42 U.S.C. §405(g). The bar for what amounts to "substantial evidence" under the Social Security Act has been set low—it is less than a preponderance of the evidence but more than a scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and

clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). "The ALJ is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and the conclusions so that we can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

Havlin has raised nearly a dozen separate arguments as to why the ALJ got her application wrong, but I need not address them all in order to determine that her claim must be remanded for further consideration. Instead, I will focus on only a few of them, each of which illustrates an error on the ALJ's part which, when taken together, require that Havlin's claim be remanded for additional consideration and re-review.

Havlin's first argument relates to typos and incorrect citations in the ALJ's written decision. Specifically, she notes that in footnote 1 of the decision there are citations to an exhibit ("Exhibit 31F") which is simply not part of Havlin's file. [A.R. 13.] Footnote 2 of the written decision likewise references exhibits of "other opinions" which the ALJ gave little weight, at least some of which are citations to exhibits which are not contained within the record of this case. [A.R. 16.] The Commissioner responds that these are harmless typos, but he concedes that the ALJ is not referencing evidence from Havlin's application in these footnotes. [DE 17 at 3, n.1.] I tend to agree with the Commissioner that this error is likely harmless. Typos and innocently incorrect citations are regrettable but almost always harmless. But I start with them because they are emblematic of the written decision's failure to give Havlin's application the careful

consideration required, as discussed below.

Thus, moving on to the more substantive arguments, Havlin's next argument is that the ALJ failed to adequately address and consider her documented obesity when making his decision, particularly when formulating her RFC. The Commissioner responds that the ALJ "implicitly" considered Havlin's obesity, and that in any event, it was a harmless error because Havlin does not suggest any specific additional limitations to her ability to work caused by her obesity. [DE 17 at 4-6.] It's uncontested that Havlin was obese from December 2016 through 2017 in that her Body Mass Index (BMI) reached or exceeded 30. [*See* A.R. 426, 542, 553, 558, 563, 569, 677, 688.] It occasionally dropped below that threshold, but neither the ALJ nor the Commissioner argues that means Havlin wasn't obese.

In assessing an individual's RFC an ALJ must assess "all the relevant evidence," including obesity, particularly when considering how one condition or impairment impacts another. *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012) ("An ALJ must factor in obesity when determining the aggregate impact of an applicant's impairments."). This is especially true when someone has been diagnosed with musculoskeletal problems. *See Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) ("The effect of the disk disease on ability to stand, sit, etc., for protracted periods is likely to be different in the two cases by virtue of the difference in weight. So in considering the credibility of the obese woman's narrative of her ability to stand, sit, etc., the administrative law judge would have to determine the effect of her obesity on that ability."). As such, I find the Commissioner's suggestion that the ALJ implicitly considered obesity unsatisfactory

and unpersuasive. "If the ALJ thought that [Havlin's] obesity has not resulted in limitations on her ability to work, he should have explained how he reached that conclusion." *Arnett*, 676 F.3d at 593.

In order to find the error harmless on account of implicit or indirect consideration of obesity, the ALJ needed to show *how* it was taken into account even if not specifically discussed, such as by "adopting limitations suggested by physicians who were aware of or discussed [Havlin's] obesity." *Arnett*, 676 F.3d at 593 (citing *Prochaska v. Barnhart,* 454 F.3d 731, 736–37 (7th Cir. 2006)). But here, like in *Arnett* and discussed further below, the ALJ did not give much credit to the opinions of the medical professionals mentioned in the written decision. "On such a record, [I] cannot find harmless error." *Id.* Lastly, it's worth mentioning that if the missing obesity analysis were the only purported error, the Commissioner's implicit consideration argument may have greater salience. But as discussed next, throughout the written decision, the ALJ seemed to give Havlin's application only cursory consideration. That undercuts the idea that the ALJ implicitly considered the effects of Havlin's obesity on her other impairments.

Havlin's next argument relates to the ALJ's analysis at step three. I agree with her that the ALJ's treatment and determination of whether Havlin met any of the applicable listings is truly lacking—it is a single three sentence paragraph. In it, the ALJ failed to name or reference or specifically discuss any listings by name. "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing."

*Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). Here, the ALJ's entire "analysis" at this step was limited to three sentences of text, did not cite a single underlying medical record and it did not specifically name, let alone actually analyze, any particular listing. [*See* A.R. 14.] That is perfunctory and warrants a reversal.

Nor can the decision be salvaged by evaluating the ALJ's decision "as a whole." *See Summers v. Colvin*, 634 F. App'x 590, 593 (7th Cir. 2016) (affirming ALJ's decision and finding perfunctory analysis at step three did not warrant reversal because "later the ALJ addressed Summers's evidence more thoroughly and explained why the record did not establish the criteria required to satisfy Listing 1.04."). The ALJ discussed Havlin's conditions and the evidence more thoroughly later in the decision when formulating Havlin's RFC, but without even a reference to any particular listing, I cannot determine whether the ALJ possibly "connected" the evidence to a listing at that later stage. Without any discussion or even reference to a single listing whatsoever, it's impossible to find this a harmless error either. *See Zellweger v. Berryhill*, 354 F. Supp. 3d 921, 928 (N.D. Ill. 2018) ("Although the doctrine of harmless error generally applies to judicial review of administrative decisions it is unclear how much leeway there is for application of the harmless error doctrine where the ALJ's error is a cursory listing analysis.") (citations and quotation marks omitted).

The Commissioner attempts to save the ALJ's written decision by going through an analysis of various listings (specifically Listing 1.04 for spinal disorders, Listing 3.03 for asthma, and Listing 11.14 for peripheral neuropathy) on his own and discussing why the underlying evidence relating to Havlin's impairments do not satisfy these

listings. But the Supreme Court has long forbidden this type of post-hoc decision making by an administrative agency, stating:

> a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*SEC v. Chenery Corp.* 332 U.S. 194, 196 (1947). Furthermore, "courts may not accept appellate counsel's post hoc rationalizations for agency action" because "*Chenery* requires that an agency's discretionary order be upheld, if at all, on the same basis articulated in the order by the agency itself." *Burlington Truck Lines, Inc. v. U.S.* 371 U.S. 156, 168-169 (1962). In sum, the Commissioner and his appellate lawyers are not allowed to do on appeal what the ALJ needed to do in the first instance.

Finally, I will also address the written decision's discussion of the medical opinion evidence in the case. Havlin's primary argument on this front concerns the ALJ's rejection of the medical opinion offered by Havlin's treating physician Dr. Matthews. Havlin's application was filed in 2016 and thus her claim is subject to the "treating source rule."[2] *See* 20 CFR § 404.1527. The rule specifically requires that the ALJ "give good reasons" in the written decision for giving a treating physician's opinion

---

[2] This rule has since been revised and the treating source rule has been removed, effective March 27, 2017. *See* 20 CFR § 404.1520c and § 416.920c. *See also* https://www.federalregister.gov/documents/2017/01/18/2017-00455/revisions-to-rules-regarding-the-evaluation-of-medical-evidence. But because Havlin's application was filed in April 2016, the treating source rule applies to her case.

less than controlling weight. 20 CFR § 404.1527(c)(2). That requires an analysis of specific factors such as the length, nature, and extent of the examining relationship between the doctor and patient. *Id.* Likewise, the ALJ must determine whether the opinion is supported or contradicted by the underlying relevant evidence.

Here, the ALJ's analysis was once again perfunctory and his conclusion is not based on substantial evidence. The ALJ found that Dr. Matthews contradicted herself because while she stated that Havlin could never feel or finger with her right hand, her findings stated "Decreased strength in hands—right worse than left. Spreading fingers 4/5 strength, grip 4+/5." [A.R. 458.] The ALJ relied on the fact that Dr. Matthews' notes said that Havlin has "4/5 strength in her right hand" and that this supposedly contradicted the feeling/fingering limitation Dr. Matthews suggested. [A.R 16.] But spreading one's fingers apart at 4/5 strength is not the same as fingering or feeling, and thus this contradiction is not as self-evident as the ALJ suggests. [*See* A.R. 458.] In all events, this supposed contradiction strikes me as a pretty thin basis to be setting aside the opinion of a doctor who has been treating someone every other month for several years. Furthermore, in discounting Dr. Matthews's opinion, the ALJ seemed to focus only on the underlying records that showed normal strength and gait while ignoring numerous instances where numbness, tenderness and leg pain were noted, as well as spinal muscle spasms, decreased motor skills and strength, and abnormal gait and stance. [*E.g.*, A.R. 391-92, 372, 518, 524.] That's impermissible cherry-picking. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of

non-disability while ignoring evidence that points to a disability finding.").

As noted, Havlin has raised numerous other arguments on appeal. But because there are reasons as discussed in this opinion, I will not address those arguments. She may raise them on remand.

## Conclusion

For the foregoing reasons, the written decision of the ALJ is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

SO ORDERED on August 14, 2020.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT